Mark L. Javitch* (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff*
and those similarly situated
*Pending Pro Hac Vice Admission

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| ADEAN HILL, JR., individually, and on behalf of all others similarly situated, | § § § Civil Action No.: [Case No.] |
| Plaintiff, | § § **CLASS ACTION COMPLAINT** |
| v. | § § **JURY TRIAL DEMANDED** |
| GERBER LIFE AGENCY LLC, and JOHN DOE, | § § |
| Defendants. | § § § § |

1.     Plaintiff ADEAN HILL, JR. ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against GERBER LIFE AGENCY LLC, and JOHN DOE, ("Defendants") to stop their illegal practices of placing unauthorized calls that play artificial or prerecorded voice messages to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct.

### NATURE OF THE ACTION

2.     Defendant Gerber Life sells life insurance. As a part of its marketing efforts, Defendant hired John Doe to place telemarketing phone calls that play an artificial or prerecorded voice message.

3.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

1
2
3
4
5

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

6
7

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

8
9
10

4.    Defendants did not obtain prior express written consent and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

11
12
13

5.    The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls in response to complaints about increased telemarketing. See S. Rep. 102-178, at 1, 5 (1991).

14
15
16
17
18

6.    Congress enacted the TCPA in 1991 to restrict telemarketing equipment that could target millions of consumers en masse. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. See S. Rep. No. 102-178, at 2-3 (1991).

19

7.    Despite such strong legislation passed almost 30 years ago, the same problem persists.

20
21

8.    To illustrate the scale of the problem facing America, it is estimated that there were over 47 billion robocalls placed in 2018, and 29 billion placed in just the first half of 2019.

22
23

9.    The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to advertise on a grand scale.

24
25
26

10.    By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

27
28

11.     Plaintiff therefore seeks an injunction requiring Defendants to stop their unconsented calling, as well as an award of actual and statutory damages to the Class members, together with costs and reasonable attorneys' fees.

### PARTIES

12.     Plaintiff ADEAN HILL is a natural person and is a citizen of the Eastern District of Texas.

13.     Defendant GERBER LIFE AGENCY LLC is a limited liability company organized and existing under the laws of the State of Ohio.

14.     Gerber Life's registered agent is Jonathan D. Neimeyer, 400 Broadway Street, Cincinnati, Ohio 45202.   .

15.     Defendant JOHN DOE is an unknown business entity.

### JURISDICTION AND VENUE

16.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

17.     This Court has personal specific jurisdiction over Defendants because Defendants targeted consumers with their advertisements in Texas, including to Plaintiff, who resides in this District. Defendants' marketing towards residents of Texas is the subject of this dispute from which this lawsuit arises.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct giving rise to this case, telephone calls placed to residents of Texas, substantially occurred in this District.

### COMMON FACTUAL ALLEGATIONS

19.     Defendant Gerber Life sells life insurance.

20.     To increase their sales and avoid paying for legitimate forms of advertising, Gerber Life hired John Doe to market their company and produce inbound calls.

21.     John Doe amassed a list of thousands of phone numbers from unknown sources that were believed to belong to consumers' phone numbers.

22.     John Doe called and played artificial or prerecorded voice messages to thousands of cellular and residential phones.

23.     Defendants did not obtain prior express written consent from Plaintiff and the Class.

24.     On July 9, 2025, Plaintiff received phone calls from John Doe on behalf of Gerber Life on Plaintiff's cell phone number ending in 8539.

25.     When Plaintiff answered the phone, Plaintiff heard an artificial or prerecorded voice message advertising life insurance that said "this is Sophia with Senior Resource"

26.     Plaintiff was solicited for life insurance by a live representative named Daniel.

27.     He received a packet from Gerber Life in the mail.

28.     Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants and had never requested that Defendants contact Plaintiff in any manner, let alone by robocall.

29.     In addition to causing statutory damages, these illegal call(s) caused annoyance, intrusion on privacy and seclusion, and wasted Plaintiff's time.

## THEORIES OF LIABILITY AGAINST DEFENDANT

30.     Even if Gerber Life did not personally initiate the TCPA-violating calls, GERBER LIFE is liable because they took steps to cause the calls to be made, and the calls were made pursuant to their actual or apparent authority, and/or ratification. Further, GERBER LIFE is liable for participating in a joint enterprise or acting in concert with John Doe.

31.     GERBER LIFE is liable for John Doe's conduct because it knows they are unlicensed and unregistered entities.

## DIRECT LIABILITY UNDER THE TCPA

1    32.    Defendants' scheme involves the use of illegal robocalling to promote their services.

2    33.    John Doe is directly liable under the TCPA for calling Plaintiff's phone using an artificial

3    or prerecorded voice.

4    34.    GERBER LIFE is also directly liable under the TCPA for outsourcing their telemarketing

5    to John Doe.

6    35.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that

7    sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

### VICARIOUS / AGENCY LIABILITY

36.    The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

37.    Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact parties who called its phone. It could have been GERBER LIFE, John Doe, or some other unknown company John Doe.

38.    However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

39.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

## ACTUAL AUTHORITY

40.     Defendant GERBER LIFE gave actual authority to John Doe to generate prospective customers.

41.     Robocalling was integrated seamlessly into their sales process so that it appeared to outside parties like Plaintiff that John Doe was the telemarketing department of GERBER LIFE.

42.     GERBER LIFE acted in concert with John Doe and has been able to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

43.     John Doe had actual authority to make robocalls to Plaintiff on behalf of GERBER LIFE.

44.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulation Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing

1  calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶

2  34).

3

## APPARENT AUTHORITY

4  47.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer

5  has apparent authority:

6

7  [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

8
9
10
11
12
13

14  28 FCC Rcd at 6592 (¶ 46).

15  48.    GERBER LIFE authorized John Doe to generate prospective customers for them.

16  49.    It appeared to Plaintiff that John Doe was one and the same company with GERBER LIFE.

17  50.    Plaintiff reasonably believed and relied on the fact that John Doe had received permission

18
19  and instructions from GERBER LIFE to advertise their home warranties.

20

21

## RATIFICATION

22  51.    Defendants GERBER LIFE actively accepted business that originated through the illegal

23  robocalls placed by John Doe.

24  52.    By accepting a contract written with Plaintiff pursuant to a robocall, GERBER LIFE

25  "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant John Doe, as described

26
27  in the Restatement (Third) of Agency.

28

53.    GERBER LIFE ratified John Doe's TCPA violations by knowingly accepting the benefit of Plaintiff as a new customer despite the fact Plaintiff had been located pursuant to illegal telemarketing.

54.    John Doe permitted their salespeople to solicit prospective customers for GERBER LIFE, including Plaintiff, while turning a blind eye to the illegal way in which the potential customer was identified.

## CLASS ALLEGATIONS

55.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or 23(b)(3) on behalf of Plaintiff and a class and subclass defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) that used an artificial or prerecorded voice.

> **Texas Class**. All persons residing in Texas who (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) that used an artificial or prerecorded voice.

56.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57.    **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

58.  **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

59.  **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

60.  **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

61.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

      i.     Whether Defendants placed calls to Plaintiff and the class that used an artificial or prerecorded voice;

     ii.     Whether Defendants obtained prior express written consent;

iii.    Whether Defendants maintain a written telemarketing policy;

iv.    Whether Defendants' conduct was *willing* and/or *knowing*;

v.    Whether the Court should treble damages based on the knowingness or willfulness of Defendants' conduct.

62.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
Violation of 47 U.S.C. § 227(b)
Telephone Consumer Protection Act
Against all Defendants
(On behalf of Plaintiff and the TCPA Class)

63.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.    John Doe placed telephone calls to Plaintiff's and the Class members' telephones without having their prior express written consent to do so.

65.    The calls were made for the express purpose of soliciting customers for home warranties sold by John Doe and GERBER LIFE.

66.    When Plaintiff and the Class answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

67.    As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, and under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

68.    Defendants and/or its agent made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

69.    Plaintiff requests that the court treble the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C) for willful and/or knowing conduct.

**SECOND CAUSE OF ACTION**
Violation of Texas Bus. & Com. Code § 305.053
Texas State TCPA Law
**(On behalf of Plaintiff and the Texas Class)**

70.    Texas Bus. & Com. Code § 305.053 creates a right of action for "a person who receives a communication that violates [the TCPA as codified at] 47 U.S.C. Section 227 [or] a regulation adopted under that provision ... against the person who originates the communication .... " Tex. Bus. & Com. Code § 305.053(a).

71.    Therefore, the elements of a § 305.053 claim "correspond to the necessary elements for a TCPA claim." *Callier v. GreenSky, Inc*., No. EP-20-CV-00304-KC, 2021 U.S. Dist. LEXIS 126769, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).

72.    Plaintiff is entitled to an award of at least $500 in damages for each such violation under § 305.053(b)(1).

73.     Plaintiff also requests the Court award treble damages based on Defendants' knowing and/or intentional violations under § 305.053(c)(1).

74.     Plaintiff also seeks a permanent injunction requiring Defendants to cease placing illegal telemarketing calls.

### THIRD CAUSE OF ACTION
Violation of Texas Bus. & Com. Code § 302.101
Failure to Obtain Texas Registration Certificate
**(On behalf of Plaintiff and the Texas Class)**

75.     Texas Bus. & Com. Code § 302.101 require telemarketers to obtain a registration certificate ... for the business location from which the solicitation is made.

76.     Texas Bus. & Com. Code § 302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

77.     Plaintiff may exercise a private right of action under Tex. Bus. & Com. Code § 17.50.

78.     Plaintiff and the class seek an award of $5,000 per violation.

79.     Plaintiff seeks a permanent injunction requiring Defendants to cease placing telemarketing calls to residents of Texas without a registration certificate.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ADEAN HILL, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B.     An order declaring that Defendants' actions, as set out above, violate Section 227(b) of the TCPA;

C.  An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D.  An order declaring that Defendants' actions, as set out above, violate Texas Bus. & Com. Code § 305.053;

E.  An order declaring that Defendants' actions, as set out above, violate Texas Bus. & Com. Code § 302.101;

F.  An order awarding $5,000 per violation under Texas Bus. & Com. Code § 302.101.

G.  An order awarding trebling damages to $1,500 per violation under 47 U.S.C. § 227(b)(3) and § 305.053(c)(1);

H.  An injunction requiring Defendants to cease all unlawful calls and otherwise protecting interests of the Class;

I.  An award of damages, including punitive damages, and costs;

J.  Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 29, 2025                Respectfully submitted,

**JAVITCH LAW OFFICE**

By: /s/ Mark L. Javitch
    Mark L. Javitch, Esq. (CA 323729)
    3 East 3rd Ave. Ste. 200
    San Mateo, CA 94401
    Telephone: (650) 781-8000
    Facsimile: (650) 300-0343
    Email: mark@javitchlawoffice.com

Attorney for Plaintiff

COMPLAINT                    13                    Case No. [Case No.]

*and the Putative Class*

## **CERTIFICATE OF SERVICE**

On the date stated below, I filed this document electronically with the United States District Court for the Eastern District of Texas CM/ECF system.

Notification was therefore automatically sent through the CM/ECF system to:

- United States District Court for the Eastern District of Texas

I declare under penalty of perjury that the foregoing is true and correct. Executed on the date stated below in San Mateo County, California.

Date: October 9 2025            By:  /s/ Mark L. Javitch
                                     Mark L. Javitch

COMPLAINT                        14                        Case No. [Case No.]